UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENNIS A.,

                    Plaintiff,

      v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                  Defendant.

CASE NO. C18-0776-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1971.[1] He obtained his GED and a certificate in office automation, but has no past relevant work. (AR 41-42, 236.)

Plaintiff protectively filed an SSI application on July 7, 2013, alleging disability beginning

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

January 1, 2003. (AR 162.)  His application was denied at the initial level and on reconsideration.

On October 12, 2016, ALJ Keith Allred held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 34-73.)  On March 20, 2017, the ALJ issued a decision finding plaintiff not disabled from the SSI application date of July 7, 2014[2] through the date of the decision. (AR 15-29.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on March 26, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's diabetes mellitus with ulnar and foot neuropathy, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and drug addiction and alcoholism (DAA) severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

---

[2] The earliest month a claimant can receive SSI is the month after the month the claimant filed the application. 20 C.F.R. § 416.335.  The time period considered begins one year prior to the protective filing date.  *See* § 416.912(d) (2015), *as amended*, § 416.912(b)(1) (2017).

ORDER
PAGE - 2

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform sedentary work, with the following limitations: lift and carry ten pounds occasionally and less than ten pounds frequently; sit for six hours and stand and walk together for two hours in an eight-hour workday with normal rest breaks; occasionally climb ramps and stairs, as well as balance, stoop, bend, squat, kneel, and crouch; never crawl or climb ladders, ropes, or scaffolds; never have exposure to workplace hazards, such as unprotected heights or moving machinery; able to perform the basic mental demands of competitive, remunerative, unskilled work, including the ability to understand, carry out, and remember simple instructions; able to respond appropriately to supervision, co-workers, and usual work situations; can deal with changes in a routine work setting; and can have no more than occasional interaction with the general public. Plaintiff had no past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a document preparer, addresser, and final assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in weighing medical opinion evidence and considering his subjective allegations, and that those errors impacted the RFC assessment and step five finding. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

As a general matter, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, the opinion of a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff here challenges the ALJ's consideration of medical opinions proffered by an examining psychologist and a treating physician. Because the record contained contradictory opinions from non-examining State agency doctors, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of the examining and treating doctors. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006).

/ / /

A.    Dr. David Widlan

Dr. David Widlan first conducted a psychological examination of plaintiff in March 2012. (AR 236-44.) He had no records to review, diagnosed alcohol abuse, rule-out major depressive disorder, moderate, and bereavement, and assessed a global assessment of functioning score (GAF) of 50. (AR 236-37.) *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR) (GAF of 41 to 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning"). Dr. Widlan found plaintiff markedly impaired in the ability to perform routine tasks without undue supervision ("He would likely require additional supervision to consistently perform routine tasks. He has not worked in the past eleven years"), being aware of normal hazards and taking appropriate precautions ("He would likely struggle with normal stressors associated with employment. He currently drinks alcohol on a regular basis."), and maintaining appropriate behavior in a work setting ("He would be prone to issues with persistence and pace"). (AR 238.) Dr. Widlan further opined plaintiff "would likely struggle to complete tasks that are not highly routine" and that "[m]ental health issues would significantly impede employment." (AR 239.) However, plaintiff's symptoms appeared treatable, treatment would likely restore or substantially improve the ability to work, and he was not receiving mental health services at that time. (*Id*.) Dr. Widlan did not estimate a maximum length of impairment and wrote "ADATSA" as the minimum duration. (*Id*.)

Dr. Widlan again examined plaintiff in January 2015. (AR 371-82.) He had no records to review, diagnosed major depressive disorder, recurrent, moderate-to-severe, generalized anxiety disorder, rule-out PTSD, and alcohol dependence in early full remission, and assessed a GAF of 46. (AR 371-73); DSM-IV-TR at 34 (serious symptoms or impairment). Dr. Widlan found marked limitations in communicating and performing effectively in a work setting and completing

a normal work day and week without interruptions from symptoms, and estimated a six month duration of impairment. (AR 373.) He indicated vocational training or services would not minimize or eliminate barriers to employment, and recommended a physical assessment.

In addressing the January 2015 evaluation, the ALJ noted Dr. Widlan's observation of marginal clothing, grooming, and hygiene, but normal psychomotor behavior and speech, cooperative behavior despite a restricted mood/affect, and functioning within normal limits in all mental status examination (MSE) categories, including thought process/content, orientation, perception, memory, fund of knowledge, concentration, abstract thinking, and insight/judgment. (AR 23.) He gave little weight to the GAF of 46 because it conflicted with Dr. Widlan's normal MSE findings and observations on examination. (AR 27.) While finding marked impairment in two functional areas, Dr. Widlan identified a duration of impairment lasting only six months, under the twelve consecutive months required to establish disability. Dr. Widlan appeared to have relied more on what plaintiff said, than on what the examination showed (*id*. (pointing to the first page of report and absence of records to review)), and plaintiff's reporting was not well-supported by the evidence.

The ALJ found Dr. Widlan's March 2012 evaluation to predate the time frame for consideration. (AR 27.) That is, the ALJ considered evidence dated on or after July 7, 2013, one year prior to the protective filing date, and Dr. Widlan's 2012 evaluation predated that time period by some fifteen months.

Plaintiff first argues the ALJ erred in favoring the contrary opinions of non-examining State agency psychologists Drs. James Bailey and Dan Donohue. Dr. Bailey, in February 2015, assessed plaintiff as able to complete a regular workday/week performing routine tasks in a competitive work environment with occasional difficulty due to depressive symptoms, and able to

interact with the general public only occasionally due to anxiety symptoms. (AR 84-85.) Dr. Donahue, in June 2015, assessed plaintiff as capable of carrying out short and simple instructions, performing routine tasks with occasional difficulty due to mental health symptoms, and limited to superficial contact with the public. (AR 98-99.) The ALJ found these limitations reasonable and included them in the RFC. Plaintiff avers these non-examining psychologists' opinions could not be considered substantial evidence because they lacked an independent examination or independent clinical findings.

Non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. § 416.913(b)(1); *accord* Social Security Ruling (SSR) 17-2p (same; effective March 27, 2017 and replacing SSR 96-6p). While the opinion of a non-examining doctor cannot by itself constitute substantial evidence justifying the rejection of an examining or treating doctor's opinion, *Lester*, 81 F.3d at 831, their findings can amount to substantial evidence so long as supported by other evidence in the record, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). *See also Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); *Lester*, 81 F.3d at 831 (ALJ may reject opinion of examining physician in favor of non-examining physician with specific, legitimate reasons supported by substantial record evidence).

Dr. Bailey considered Dr. Widlan's January 2015 findings, Community Psychiatric Clinic (CPC) treatment records and MSE's finding plaintiff cooperative, with intact thought processes, and fully oriented, and plaintiff's report of his ability to care for his hygiene and for his dog, prepare simple meals, do light household chores, walk, shop, use public transport, and watch TV.

(AR 80.)  Dr. Donahue considered both the CPC records and records from Neighborcare Health, including a February 2015 diagnosis of adjustment disorder, depressive, stable, no medication changes, normal memory, and full orientation.  (AR 93-94.)  The ALJ's decision reflects his consideration of a January 2014 MSE in which plaintiff was fully oriented, with some suicidal ideation and poor personal hygiene, but had normal behavior, psychomotor behavior, and speech, euthymic mood, appropriate affect, intact/average memory and intellect, cooperative behavior, no difficulty maintaining concentration, and logical thought processes; a March 2014 MSE in which plaintiff was neither anxious nor agitated and was joking and in a good mood; and a December 2014 MSE in which he was fully oriented without any psychiatric concerns noted.  (AR 23 (citing AR 294, 256, 332).)  Subsequent to Dr. Widlan's January 2015 evaluation, and "[t]hrough the combination of treatment and medication, the claimant was, by April 2016, 'friendly and cooperative,' smiled easily, able to make jokes and had a 'good sense of humor.'"  (AR 23-24 (quoting AR 481).)  The ALJ noted similar findings throughout the record.  (AR 24 (citing AR 247, 252, 342, 349, 388, 415, 421, 427, 451, 495, 502, 506, 510, 514, 518, 522, 528, 532).)  The ALJ therefore properly accorded the opinions of Drs. Bailey and Donohue significant weight given the support of independent evidence in the record.[3]

The ALJ also provided sufficient specific and legitimate reasons for assigning little weight to the opinion of Dr. Widlan.  An ALJ may reject a doctor's opinion where it is inconsistent with the doctor's own findings and observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999); where it is based to a large extent on a claimant's properly discounted self-reporting, *Tommasetti v. Astrue*,

---

[3] In his reply, plaintiff argues defendant impermissibly relied on *post hoc* reasoning in making this argument.  Defendant, however, properly included the argument in response to plaintiff's contention the ALJ erred in favoring the opinions of non-examining doctors over the opinion of Dr. Widlan.

533 F.3d 1035, 1041 (9th Cir. 2008); and where it is inconsistent with and lacks the support of the evidence as a whole, *id.*, and *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004). Temporary limitations are insufficient to meet the durational requirement dfor a finding of disability, and this factor may be considered in the decision to reject a medical opinion. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term excuse from work was not indicative of "claimant's long term functioning."); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989) (considering the fact a physician had opined claimant was unemployable for "four months, too short a period to make him eligible for SSI benefits.")

Dr. Widlan did not review any medical records, based the GAF score on "symptom description; subjective impressions", found plaintiff within normal limits on every aspect of the MSE, and observed normal psychomotor behavior and speech and cooperative attitude and behavior. (AR 371-75.) The ALJ reasonably construed the findings and observations of Dr. Widlan as inconsistent with the GAF and two marked limitations assessed, and the report as reflecting substantial reliance on plaintiff's subjective reports. While Dr. Widlan presumably also considered plaintiff's "marked" performance on the Beck's Depression Inventory (BDI) and Beck's Anxiety Inventory (BAI) (AR 374), those questionnaires also reflected plaintiff's subjective reports. *Broyles v. Berryhill*, 17-cv-00279-TLF, 2017 U.S. Dist. LEXIS 205182 at *17 (W.D. Wash. Dec. 13, 2017); *Miller v. Colvin*, 13-cv-05698 JRC, 2014 U.S. Dist. LEXIS 81765 at *7 (W.D. Wash. Jun. 16, 2014); *Hawkins v. Astrue,* No. 3:11-CV-05701-KLS, 2012 U.S. Dist. LEXIS 56072 at *12 (W.D. Wash. April 19, 2012).

Moreover, and as the ALJ observed (AR 27), a GAF score is merely "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's

need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir.1998). It is based on either an individual's symptoms or her functional impairments, whichever is lower, DSM-IV-TR at 32-33, and "does not have any direct correlative work-related or functional limitations." *Hughes* v. *Colvin,* 599 Fed. Appx. 765, 766 (9th Cir. Apr. 15, 2015) (no error in failure to address GAF score). *See also* DSM-V at 16-17 (5th ed. 2013) (the most recent version of the DSM does not include a GAF rating for assessment of mental disorders), and Administrative Message 13066 (a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of functioning).

The ALJ also, and as outlined above, had substantial evidence support for his conclusion plaintiff's subjective reporting, and Dr. Widlan's reliance on that reporting, was not well-supported by the record. Finally, Dr. Widlan assessed plaintiff's limitations to last a maximum of six months. Plaintiff argues he continued to present with serious mental impairments despite treatment received and that, at the least, the limitations assessed presented themselves from Dr. Widlan's 2012 assessment through his assessment in 2015. The Court, however, finds no error in the ALJ's consideration of the fact Dr. Widlan assessed the two marked and the remaining mild and moderate limitations to last for a maximum of six months.

The ALJ, in sum, provided the necessary specific and legitimate reasons for assigning little weight to Dr. Widlan's 2015 opinion. In addition, plaintiff does not challenge, not does the Court find error in the ALJ's determination the 2012 evaluation by Dr. Widlan predated the time period at issue.

/ / /

/ / /

B.    Dr. Joshua Kachner

In September 2016, treating physician Dr. Joshua Kachner[4] completed a medical source statement addressing plaintiff's ability to perform physical work-related activities.  (AR 542-48.) Dr. Kachner opined plaintiff could not lift or carry up to ten pounds, stating:  "Unable to lift 10 pounds 1/3 of the time due to right ulnar neuropathy. . . . History of pain in right elbow with persistent use of right hand.  History of pain in lower back, suspected to be due to T 11 fracture reported by patient but not verified."  (AR 542.)  Plaintiff could, in an eight-hour day, sit for three hours at a time and six hours total, stand for one hour at a time and five hours total, and walk for forty-five minutes and three hours total.  (AR 543.)

Dr. Kachner answered "yes" in response to a question asking whether plaintiff required use of a cane, noting "4 wheeled walker," but subsequently opined plaintiff could ambulate without the use of a cane for one mile, that a cane was not medically necessary, and that he could carry small objects when without a cane.  (*Id*.)  He based this assessment on:  "History of pain with prolonged sitting, standing, or walking." (*Id*.)  Plaintiff could never push/pull with either extremity due to "[h]istory of pain (back, abdominal wall, right 4th and 5th fingers)", but could perform all other manipulative activities and operate foot controls.  (AR 544.)  He could occasionally climb ramps and stairs, stoop, kneel, and crouch, but never climb ladders or scaffolds or crawl due to pain in his back and dizziness from medications.  (AR 545.)  He could never operate a motor vehicle due to impaired vision, could not work at unprotected heights, be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme heat, or vibrations, could occasionally tolerate extreme cold due to "[s]ubjective pain in arm with cold exposure", and could continuously tolerate moving mechanical parts and noise.  (AR 546.)  He could perform all activities of daily

---

[4] The ALJ appears to have misspelled this physician's name.  (*See* Court Transcript Index at 3 and AR 38.)

living identified on the form, including the ability to ambulate without using a wheelchair, walker, or two canes or crutches. (AR 547.) Dr. Kachner identified duration of impairment as twelve months.

The ALJ assigned little weight to Dr. Kachner's opinion plaintiff "is physically disabled primarily because this opinion invades the province of the Commissioner." (AR 26.) The opinion also conflicted with the evidence covering the entire period at issue. (*Id*. (citing AR 245, 270, 285, 303, 332, 427, 506, 542-47).) Its persuasiveness was further reduced by Dr. Kachner's apparent reliance on plaintiff's subjective reports, including, for example, his assignment of a limitation based on "'[s]ubjective pain with cold exposure.'" (*Id*. (quoting AR 546).)

The ALJ observed that, in contrast to Dr. Kachner's observation plaintiff required use of a four-wheeled walker, plaintiff mentioned "having some difficulty standing or walking because of selling the 'Real Change' newspaper on a street corner in downtown Seattle 7 days a week." (*Id*. (quoting AR 520).) Dr. Kachner also contradicted his opinion regarding a walker in opining plaintiff could walk a mile without the use of an assistive device. The ALJ gave Dr. Kachner's opinion of limitations in plaintiff's ability to stand and walk some weight, and, due to the inconsistencies in the opinion, found a more restrictive RFC in terms of standing and walking warranted. Specifically, while Dr. Kachner opined plaintiff could stand/walk a total of five and three hours respectively, the ALJ limited standing and walking to two hours total.

The ALJ found Dr. Kachner's opinion plaintiff could not lift or carry any amount of weight contradicted by the evidence and assigned it little weight. "As one example: the claimant sought medical treatment in September 2014 after falling, "'when helping to load furniture with a friend.'" (*Id*. (quoting AR 337).) The ALJ also pointed to his earlier finding plaintiff could shop for groceries, clean up after his service dog, and perform other activities.

Plaintiff first avers error in the ALJ's assignment of greater weight to the opinion of a non-examining doctor over that of a treating doctor. That is, while assigning little weight to the opinion of Dr. Kachner, the ALJ assigned partial weight to the opinion of non-examining State agency physician Dr. Wayne Hurley, who, in June 2015, opined plaintiff could perform a reduced range of medium level work. (AR 26, 96-98 (occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand and/or walk and sit about 6 out of 8 hours a day, unlimited push/pull, occasionally climb ramps/stairs, avoid concentrated exposure to extreme cold and heat, and no other environmental, manipulative, postural, or other limitations).) The ALJ found Dr. Hurley's opinion did not adequately address limitations stemming from plaintiff's diabetes and, although plaintiff was non-compliant with treatment, found the evidence to support a more restrictive RFC to a range of light work. (AR 26.) The ALJ did adopt the prohibition on climbing ladders or scaffolds, but found plaintiff could only occasionally climb ramps and stairs, as well as balance, stoop, bend, squat, kneel, and crouch, "again because of poorly controlled diabetes." (*Id*.) He concluded plaintiff could not crawl and prohibited any exposure to extreme cold, heat, and hazards, explaining Dr. Hurley's opinion did not adequately consider plaintiff's physical impairments, medication side-effects, and/or the subjective allegations.

Given the other substantial evidence in the record, the ALJ did not err in assigning partial weight to Dr. Hurley's opinion. (*See* AR 22-23 (describing records showing, *inter alia*, no edema, diabetic foot ulcerations or calf tenderness in July 2013; normal bilateral lower extremity strength in January 2014; better control of diabetes with treatment compliance in February 2014 and no foot ulcerations, edema, or calf tenderness that same month; April 2014 reminder that may be able to decrease diabetes effects with treatment compliance and no difficulty grasping objects despite complaint of some numbness in left hand palm; November 2014 examination showing generally

adequate health, with normal filament testing of both feet, grossly intact plantar reflex, and normal motor and sensory functioning;   April 2015 observation plaintiff looked well, but had some diminished sensation and/or range of motion on neurological exam; July 2015 normal physical exam, with no skin changes of feet/diabetic ulcers; further finding no medically determinable impairment that would cause alleged back pain and noting plaintiff's report of using a walker for diabetes-related dizziness, not back pain).)[5]  The ALJ also assigned some weight to a March 2015 letter from treating physician Dr. Dennis Haack limiting plaintiff to lifting no more than ten pounds during a move from/to a homeless camp.  (AR 27, 397.)  The ALJ noted the temporary nature of this assessment, but limited plaintiff to sedentary work and lifting no more than pounds based on other evidence, essentially agreeing with Dr. Haack.

Plaintiff next asserts the ALJ could not simply disregard Dr. Kachner's opinion as based on an issue reserved to the Commissioner, and notes the absence of any indication the ALJ tried to contact this treating source for clarification.  *See* SSR 96-5p ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.") (rescinded effective March 27, 2017); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("'[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'") (quoted source omitted).  Plaintiff notes Dr. Kachner did not offer a conclusory statement as to disability and, rather, identified specific functional limitations.

Plaintiff correctly observes Dr. Kachner did not offer a conclusory opinion of disability,

---

[5] Plaintiff again maintains the Commissioner relied on improper *post hoc* rationalizations in addressing the opinion of the non-examining doctor.  However, as with Dr. Widlan, the Commissioner properly discussed the opinion of Dr. Hurley in countering plaintiff's contention the ALJ improperly favored a non-examining doctor's opinion.

thereby intruding into a determination reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.") The Commissioner states the ALJ presumably included this reason because Dr. Kachner submitted an opinion without any supporting treatment notes. She argues that, while not alone sufficient to discount Dr. Kachner's opinion, this factor supports the ALJ's overall conclusion. She also notes that plaintiff did not submit any examination or treatment notes from Dr. Kachner to either the ALJ or to the Appeals Council. (*See* AR 36 (no objection at hearing to the record "as it currently stands"), AR 126, 222 (pre-hearing letters regarding the submission of evidence), and AR 7 (Appeals Council letter)). She avers plaintiff's assertion of a failure to further develop the record is based on the mere presumption Dr. Kachner's records would support his opinion and "improperly shift[s the claimant's] own burden to the ALJ." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (duty "exists even when the claimant is represented by counsel.") That duty includes development of relevant medical evidence. 20 C.F.R. § 416.912(b). An ALJ must "make every reasonable effort" to help a claimant get medical evidence, a process which entails making an initial request and, if not received, "one follow-up request to obtain the medical evidence necessary to make a determination." § 416.1512(b)(1)(i). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60 (plaintiff's argument rested on evidence of a diagnosis dated months after the ALJ's decision, and ALJ had no duty to develop the record where record was neither ambiguous, nor inadequate).

The claimant, however, bears the ultimate burden to prove disability. § 416.912(a); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The claimant must provide information about or submit all known evidence relating to the allegation of disability. § 416.912(a). This duty is ongoing and applies at each level of administrative review, including the Appeals Council. *Id*. A claimant's attorney also has an affirmative duty to obtain information and evidence that must be submitted. § 416.1540(b).

It is not clear why Dr. Kachner provided only a medical source statement and no treatment records. There is no indication the ALJ failed in his duty to assist in the development of the record, and plaintiff does not provide an explanation for the absence of treatment records. Plaintiff also failed to raise any objection as to the sufficiency of the record either before the ALJ or in seeking review by the Appeals Council. Plaintiff, accordingly, waived this argument. *See, e.g.*, *Michelle Alicia S. v. Berryhill*, No. 17-2114, 2019 U.S. Dist. LEXIS 24487 *17-19 (C.D. Cal. Feb. 14, 2019) (rejecting contention ALJ failed to adequately develop the record by not obtaining missing medical records; plaintiff had the burden to produce evidence to support her claim, did not raise the issue at hearing, and waived the argument given her attorney's affirmative representation at hearing that the record was complete) (citing, *inter alia*, *Meanel*, 172 F.3d at 1115 (reviewing court need not address issues not raised before ALJ or Appeals Council unless manifest injustice would result); *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (as amended Feb. 28, 2018) (upholding and applying *Meanel* after *Sims v. Apfel*, 530 U.S. 103 (2000)); *Jones v. Berryhill*, 17-00215, 2018 U.S. Dist. LEXIS 135625 at *10-12 (D. Idaho Aug. 9, 2018) (claimant waived argument as to absent records where counsel did not raise any issue with the medical record at hearing or ask that the record remain open for submission of additional evidence). There is, moreover, no indication the ALJ found the report from Dr. Kachner ambiguous or the record inadequate to allow for a

proper evaluation of his opinion. The ALJ did not mention the absence of treatment records or reject the opinion of Dr. Kachner as unsupported by his own findings or observations.

The ALJ also did not explain why he found the opinion of Dr. Kachner to invade the province of the Commissioner. Because there does not appear to be any support for that conclusion, the Court agrees the ALJ erred in finding Dr. Kachner offered an opinion on an issue reserved to the Commissioner. However, given the other specific and legitimate reasons provided in relation to this opinion evidence, the Court finds the error harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case."); *Carmickle*, 533 F.3d at 1162-63 (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless; the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.") *Cf. McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) ("The law reserves the disability determination to the Commissioner. Rejection of the treating physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more explanation."); *Bayliss*, 427 F.3d at 1217 (finding no duty to recontact where doctor's opinion was not supported by clinical evidence and was based on claimant's subjective complaints and the ALJ found the record adequate to make a determination as to disability).

The ALJ did not wholly reject the opinion of Dr. Kachner. The ALJ found plaintiff more limited than Dr. Kachner opined in relation to standing and walking, accepted the opinion on maximum sitting and on every postural activity except balancing, and either accepted or found

plaintiff more limited in relation to environmental factors.  (*See* AR 21, 543-46.)  Plaintiff does not assert or otherwise demonstrate any error in these findings.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("overinclusion of debilitating factors is harmless").

The ALJ provided specific and legitimate reasons for rejecting Dr. Kachner's opinion plaintiff could not lift and/or carry any amount of weight, required a cane or four-wheeled walker to ambulate, could not push or pull, and could never balance, and instead finding plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently and could occasionally balance.  That is, the ALJ properly discounted Dr. Kachner's opinion upon finding it inconsistent with the medical record as a whole, *Tommasetti*, 533 F.3d at 1041; reflecting significant reliance on plaintiff's subjective reporting, *id.*; inconsistent with evidence of the level of plaintiff's activity, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); and internally inconsistent, *Morgan*, 169 F.3d at 603.

Plaintiff asserts cherry picking based on the one example of reliance on subjective reporting provided by the ALJ.  However, other examples are apparent, including the ALJ's repeated reliance on plaintiff's allegation of back pain, which Dr. Kachner conceded had been reported, but not verified, and on other "[h]istory of pain."  (AR 542-44.)

Plaintiff also asserts the ALJ erred in failing to inquire into what physical activities he actually performed in assisting a friend with a move, and notes his testimony he only grocery shopped with assistance from a living skills manager, who drove him back and forth to the grocery store and assisted him in picking out food and carrying the food into his house.  (AR 59-60.)  He stresses the difference between his meager basic activities of daily living and the activities

involved in performing a full-time job.

The ALJ is responsible for assessing the evidence and for resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan*, 169 F.3d at 599. Plaintiff here construes the evidence in the record differently than the ALJ. Because the ALJ offered a rational interpretation of the evidence, and because his conclusions have the support of substantial evidence, plaintiff's assignment of error fails. (*See, e.g.*, AR 185-90 (July 2014: plaintiff reported he feeds, plays with, and takes his service dog on short walks, walks and uses public transportation, shops in stores once or twice a week for short time periods, regularly goes to medical appointments and the grocery store and does not require anyone to accompany him, and did not indicate use of a walker, cane, or similar assistive device); AR 249 (March 2014: plaintiff cleans up after his dog); AR 337 (September 2014: "Fell when helping to load furniture with friend."); AR 520 (August 2015: "He [recently] started a 7 [day] a week job selling the newspaper 'Real Change' from the street corner at 3rd and Pine. Has his dog with him. Wants to consider a motorized scooter as the dog [cannot] pull that like he can the walker, the dog now weighs over 40 lbs."); AR 470 (November 2015: "noted that he works Wed-Sun from 3p-7p"); AR 482 (April 2016: reporting he play with his dog and plays games on his computer).) Plaintiff does not, therefore, demonstrate harmful error in the consideration of this or any other medical opinion evidence.

/ / /

<u>Symptom Testimony</u>

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p.[6]

As described by the ALJ, plaintiff testified he is physically disabled due to severe back pain and diabetes with accompanying peripheral neuropathy, the most he can do on days when his back acts up is recline for up to eight hours, he is also disabled due to dizziness and an inability to walk more than a block and a half even using a walker, and is unable to concentrate sufficiently. (AR 22, 50-56.) Plaintiff reiterated these symptoms in a function report, and noted severely diminished sensation in both feet and frequent anxiety around others. (AR 22, 184.)

The ALJ concluded plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (AR 22.) Contrary to plaintiff's contention, the ALJ provided several specific, clear, and convincing reasons in support of that conclusion.

/ / /

---

[6] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

A.     Medical Evidence

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857; SSR 96-7p and 16-3p.   An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.")   An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found inconsistency between plaintiff's allegations as to the degree of his impairment and the medical evidence, and found the evidence to instead support the assessed RFC. (AR 22.)   He contrasted plaintiff's allegation of disability based on diabetes and peripheral neuropathy with evidence suggesting a lesser degree of impairment. (AR 22-23 (describing records showing, *inter alia*, no edema, skin changes, or diabetic foot ulcerations, no calf tenderness, normal bilateral lower extremity strength, showing or suggesting better diabetes control with treatment compliance, no difficulty grasping objects, normal or generally adequate examinations, normal filament testing bilaterally, grossly intact plantar reflex, and normal motor and sensory functioning).)   The ALJ also found no medically determinable impairment that would cause the alleged back pain, and noted plaintiff's use of a walker for diabetes-related dizziness, not back pain.   (AR 23.)   The ALJ likewise found the evidence associated with plaintiff's mental impairments to support the RFC allowing for his performance of unskilled tasks, with limited

social contact/interaction, and mental functioning better than plaintiff alleged. (AR 23-24 (describing normal or average MSE findings and other observations in January, March, and December 2014 and in Dr. Widlan's January 2015 evaluation, and similar findings throughout the record).)

The ALJ did not, as plaintiff avers and as in *Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015), limit his assessment to simply stating he did not accept plaintiff's symptom testimony, followed by a summary of the medical evidence supporting the RFC determination. The ALJ identified and described inconsistency with and a lack of support in the medical record as one of several reasons for discounting plaintiff's testimony. (*See* AR 22-25.) Nor was the ALJ required to isolate and separately assess each and every statement made by plaintiff. *See generally Treichler*, 775 F.3d at 1102-03 (finding one-sentence, boilerplate finding insufficient, and emphasizing that, while symptom "analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). The ALJ properly provided sufficiently specific reasoning allowing for the conclusion he rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit plaintiff's allegations. *Brown-Hunter,* 806 F.3d at 493-94.

B.   Treatment

An ALJ also properly considers evidence associated with a claimant's treatment. 20 C.F.R. § 416.929(c)(3); SSR 96-7p and 16-3p. That consideration may include unexplained or inadequately explained failure to follow through with prescribed treatment. *Tommasetti*, 533 F.3d at 1039. The ALJ must consider possible reasons for a failure to comply with treatment. *See* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek

treatment consistent with the degree of his or her complaints.")

The ALJ considered that, while alleging disabling anxiety, plaintiff reported drinking more than six cups of caffeinated beverages, including coffee and soda, daily. (AR 24, 255.) (*See also* AR 475 (July 2015: "[I]n ER over weekend, had glucose 509, dehydrated, drinking too much caffeine.")) A July 2016 record noted plaintiff's non-compliance with treatment "'extends to insulin regimen, takes 3-4 weekly, no longer checking his [blood sugar levels (BSL)] daily.'" (AR 24, 456.) In June 2015, plaintiff had a random BSL of 312, after having eaten an ice cream bar and drinking a sixteen-ounce regular Coca-Cola, and reported his refusal to drink diet beverages. (AR 24, 511.) In July 2015, Dr. Haack described plaintiff's non-compliance with his insulin regimen as chronic, and "the claimant never offers an explanation for this." (AR 24, 515.) Poverty or the inability to afford insulin or other diabetes treatment material provided a possible explanation, but was not offered by plaintiff. The ALJ found the persuasiveness of plaintiff's allegations reduced by the failure to follow prescribed treatment.

Plaintiff avers error in the ALJ's failure to consider evidence explaining his failure to comply with treatment. The ALJ did not address plaintiff's testimony he lost his glucometer in a house move and still did not have one at the time of the October 2016 hearing, as well as that, in 2014, his insulin expired due to his lack of a home and inability to store it at the proper temperature. (AR 51-53.) Plaintiff also points to an October 2013 treatment note in which he reported he had been off insulin for a month due to his lack of any income (AR 272), as well as other notes in the record relating to compliance (*see, e.g.*, AR 263 (July 2014: no insulin since May 20, 2014 due to power outage); AR 335 (September 2014: access to food erratic because homeless).)

The record contains both explanations for a lack of compliance and evidence supporting the ALJ's conclusion. For example, in June 2015, Dr. Haack stated plaintiff had poor motivation

to control his diabetes and poor compliance with his medication regimen, and "suspects the history he gives me of his medication usage is not accurate[.]" (AR 511.) Plaintiff admitted he often missed insulin doses and was not following the prescribed diet, including drinking regular soda daily and eating treats such as ice cream on a regular basis. Plaintiff was concerned about the possibility of having to break camp, put his things in storage, and live on the streets again, and "one of the reasons he is missing lots of his insulin dosages [is] he gets too busy and does not find the time for it." (*Id*.) In July 2015, Dr. Haack both described plaintiff's lack of compliance as chronic, and noted his "difficult living situation – homeless and currently in tent city." (AR 515.) In August 2015, Dr. Haack described plaintiff's diabetes as "poorly controlled due to social situation and poor compliance[,]" again noting plaintiff's residence in a tent city, and that plaintiff had lost his glucometer. (AR 519.) In early October 2015, plaintiff was "not concerned" about his continued non-compliance and would "'do what he can[.]'" (AR 524.) Dr. Haack described plaintiff's diabetes as poorly controlled due to his difficult living situation (homeless) and his lack of compliance, and noted plaintiff had not been checking his BSLs despite getting a new glucometer at his last visit. (AR 524.) Later that month, plaintiff's diabetes remained "poorly controlled, he [does] not check his [BSLs regularly], and often skips taking his insulin." (AR 529.)

By December 2015, Dr. Haack noted plaintiff had had permanent housing and his own mini-fridge to store insulin since the end of October, but, despite the removal of many barriers, his diabetes was "still not in any better control" and he continued with poor treatment compliance. (AR 533-34.) Plaintiff admitted and his glucometer showed he had not been checking his BSLs as often as earlier stated. (AR 533.) In July 2016, plaintiff's insulin non-compliance continued, and he was no longer checking his BSL's daily. (AR 456.) (*See also* AR 463-64 (February 2016: "He reports recently meeting with his PCP and, since then, making an effort to check in BS and

administer insulin more regularly.”; “LSA informed client that some of his food choices are not good for people with diabetes.  Client said he knows and he is careful.”); AR 461 (April 2016: insulin expired in power outage previous month).)

The ALJ should have more fully discussed the evidence associated with plaintiff’s failure to comply with treatment.  However, given the mixed nature of that evidence, and given the ALJ’s unopposed reliance on evidence of plaintiff’s failure to comply with treatment recommendations regarding his diet, the Court finds the ALJ’s deficient discussion of the evidence associated with non-compliance harmless.

C.    Work and Other Issues

The ALJ found additional inconsistencies in the record to further reduce the persuasiveness of plaintiff’s allegations.  In January 2014, plaintiff reported to a provider “that given his past work as a bill collector, ‘he could likely do some office work.’”  (AR 24, 295.)  In that same record, plaintiff noted he had stopped working in 2000 to serve as his wife’s primary caregiver, that his wife passed away in 2011, and that he was “looking for work currently, but has been having a difficult time getting hired [due to] the 10+ year gap on his resume.”  (AR 295.)  The ALJ found plaintiff’s report to conflict with his hearing testimony of mental and/or physical disability.  (AR 24.)  This was further supported by the September 2014 record showing plaintiff had fallen “‘when helping to load furniture with a friend.”  (AR 24, 337.)  The ALJ reasoned:  “Were the claimant physically disabled and/or unable to stand or walk for long, it is unlikely that he would have contemplated moving furniture, let alone done so.”  (AR 24.)

The ALJ next noted plaintiff’s conviction for armed robbery while a juvenile and incarceration for two-and-a-half years.  (AR 24.)  He stated:  “Unless the claimant had his criminal record formally sealed by a court order, this felony conviction history will appear on standard

employment background checks. Having criminal history presents the claimant with a substantial non-disability related barrier to finding work, but not performing unskilled tasks involving limited social contact/interaction." (*Id.*)

The ALJ was further troubled by the absence of a sustained work history even before the alleged onset date. Plaintiff had not worked or received any income since at least 2001. He earned $58.50 in the year 2000 and, in the ten years prior to that, earned nothing in three years, less than $2,000.00 in five years, and appeared to perform substantial gainful activity only in 1998 and 1999. "This lack of attachment to the workforce, long before the alleged onset date, may include a period of incarceration, but also appears to indicate a lack of attachment to the workforce for reasons other than disability, and suggests that the claimant's current absence from the workforce may be for reasons other than disability or impairment." (AR 24-25.)

Plaintiff argues the ALJ erred in relying on evidence of his remote criminal history as a basis for rejecting his symptom testimony. He states he never used that history as an excuse for his inability to work, the absence of any inconsistency between the history and his testimony, and that "subjective symptom evaluation was never meant to be an examination of an individual's character." SSR 16-3p. Plaintiff further contends that, while accurately noting his poor work history, the remainder of the ALJ's analysis is based solely on unsupported speculation. He points to his testimony of his termination in 1998 because he was not successful (AR 42-43) and that, after caring for his seriously ill wife until she passed away, he had no success in finding work and eventually stopped looking due to his impairments (AR 43-46).

As the Commissioner suggests, the decision does not reflect reliance on plaintiff's juvenile conviction, in and of itself, as a basis for rejecting symptom testimony. However, there is also nothing in the record to support the ALJ's consideration of the conviction as serving as a non-

disability-related barrier to work. The Court therefore agrees with plaintiff this aspect of the ALJ's decision does not serve as a specific, clear, and convincing reason for discounting his symptom testimony. *See, e.g.*, *Harris v. Berryhill*, C17-1506- BHS, 2018 U.S. Dist. LEXIS 113739 at *16-17 (W.D. Wash. Jul. 9, 2018) (neither simple fact of a felony conviction, nor the possibility criminal history may have posed a non-disability-related barrier to employment serve as clear and convincing reason to reject symptom testimony). The Court does not, however, find this consideration to undermine the substantial evidence support for the ALJ's decision.

An ALJ may consider a claimant's prior work record in assessing symptom testimony. 20 C.F.R. § 416.929(c)(3). An extremely poor or non-existent work history is reasonably considered as undermining a claimant's testimony. *See Thomas*, 278 F.3d at 959 (ALJ properly considered "'extremely poor work history'" and showing of "'little propensity to work in [claimant's] lifetime'" as negatively affecting her credibility as to inability to work; noting claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability"); *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 821-22 (C.D. Cal. 2007) ("An ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination."). The ALJ here drew reasonable inferences in relation to plaintiff's extremely limited work history. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.")

The ALJ also reasonably considered the inconsistency between plaintiff's allegation of disability and the evidence he conceded his likely ability to perform work some office work, as well as evidence of physical ability and activity inconsistent with his alleged degree of impairment. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of

the evidence[.]"); SSR 16-30 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."); *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("[A]n ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."). The ALJ, for this reason and for the reasons stated above, provided sufficient reasons, supported by substantial evidence, for discounting plaintiff's symptom testimony.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 6th day of March, 2019.

Mary Alice Theiler
United States Magistrate Judge